UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT <br> LLOYD'S, LONDON SUBSCRIBING TO <br> POLICY NO. GEP9330, as subrogee <br> of SIMBORG DEVELOPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MEYER'S COMPANIES, INC., | Case No. 2:14-CV-262 – WCL-JEM |
| MEYER'S COMPANIES, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> AUBURN SUPPLY CO., INC., and <br> LEGEND VALVE & FITTING, INC., <br><br> Third-Party Defendants. | |

## OPINION AND ORDER

Before the Court is Third Party Defendant, Auburn Supply Co., Inc.'s ("Auburn's") Motion to Dismiss the Third Party Complaint of Meyer's Companies, Inc. ("Meyer's") [DE 21]. For the following reasons, the Motion to Dismiss will be GRANTED.

## FACTUAL BACKGROUND

On July 25, 2014, Plaintiffs, Certain Underwriters at Lloyds, London Subscribing to Policy No. GEP9330 ("Lloyds"), as subrogee of Simborg Development, Inc., filed their Complaint against Meyer's asserting claims of negligence, breach of contract, and breach of implied warranties arising from work performed in connection with the modification and installation of a plumbing system in Simborg's facility. [DE 1]. Meyer's filed an Answer to the Complaint as well

1

as a Third-Party Complaint against Third-Party Defendants Auburn and Legend Valve & Fitting, Inc. ("Legend") [DE 5,12] seeking indemnification from them in the event that Meyer's is liable to Lloyds. The present Motion to Dismiss relates to Meyer's Third-Party Complaint against Auburn. Before turning to the merits of that motion, the basic facts as set out in the pleadings are as follows:

Meyer's is an Indiana corporation in the heating, cooling, plumbing and electrical contracting business. Auburn is a wholesale plumbing supplier incorporated in Illinois. On May 8, 2012, Meyer's entered into a Construction Subcontract Agreement with Simborg Development, Inc. ("Simborg") wherein Meyer's agreed to perform plumbing work at the property located at 9200 Calumet Avenue, Munster, Indiana. As part of the plumbing work performed, Meyer's installed a 4" ball valve in a water main located at the Calumet Avenue property. Meyer's purchased the valve from Auburn who, in turn, purchased it from the valve manufacturer, Legend.

On September 12, 2012, the valve allegedly failed causing flooding and damage to the Calumet Avenue property. Lloyds insured Simborg at the time of the incident and filed the instant suit to recover damages it paid as a result of the valve's failure.

## **STANDARD OF REVIEW**

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2008) (quoting *Twombly,* 550 U.S. at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted). A complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank,* 614 F.3d 400, 404 (7th Cir.2010). On the other hand, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago,* 631 F.3d 823 (7th Cir.2011).

## **DISCUSSION**

Lloyds' original Complaint in this case asserts three theories of liability against Meyer's: (1) negligence in the manner in which the plumbing work was performed; (2) breach of the Subcontractor agreement; and (3) breach of the implied warranty that the work would be performed in a workmanlike manner. Mindful of these allegations, the Third-Party litigants consume a large amount of paper disputing exactly what legal claims Meyer's has asserted in its Third-Party Complaint. What is apparent at this point is that both parties agree that Meyer's is seeking indemnification, but disagree on what theory the Third-Party Complaint espouses that generates the right to indemnification. In fact, it took the parties a sur-reply and a sur-response for them to weed through the potential and changing theories that have been discussed.

Under Indiana law, "[g]enerally, the right of indemnification arises only by contract, express or implied, or by statutory obligation." *Rotec v. Murray Equip., Inc.,* 626 N.E.2d 533, 535 (Ind.App.1993); *see also Mills v. Hausmann–McNally, S.C.,* No. 1:13–CV–00044–SEB–DKL, 2014 WL 129276, at *5 (S.D.Ind. Jan.14, 2014). "However, a right to indemnity may be implied

3

at common law where no express contractual or statutory obligation exists." Rotec, 626 N.E.2d at 535. Implied indemnity is only available in Indiana when "liability to another is solely derivative or constructive and only against one whose wrongful act has caused such liability to be imposed." *Mullen v. Cogdell,* 643 N.E.2d 390, 400 (Ind.App.1994) (citing *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.,* 578 N.E.2d 669, 671 (Ind.1991)). "Generally, implied indemnity is created by a relationship between the parties, i.e. employer-employee, principal-agent." *Sears, Roebuck and Co. v. Boyd,* 562 N.E.2d 458, 461 (Ind.App.1990);*see also Mills,* 2014 WL 129276, at *5 ("[R]elationships where a 'derivative or constructive' implied right to indemnity may apply include those of an employer to an employee and a manufacturer of a defective good to the retailer of that good.").

As it is presently drafted, the Third-Party Complaint does not allege a contractual obligation under which Auburn could be held liable for indemnification. The Third-Party Complaint *does* asserts that "if the Court or jury determines that the subject valve failed as a result of a defect in design, manufacturing, labeling, warning, or instructions for use, Auburn and Legend owe indemnity to Meyer's for any losses Meyer's incurs … as a result of Lloyd's claims." Given this verbiage, Auburn naturally presumed that Meyer's was making a statutory claim for indemnification under the Indiana Products Liability Act ("IPLA"). However, such an action may not be maintained against a seller of a product unless that seller manufactured the product. Ind.Code §34-20-2-3. As Auburn points out, the Third-Party Complaint has no allegations that Auburn manufactured the valve at issue. In response, Meyer's declares "Meyer's has not asserted an IPLA claim, and therefore the IPLA is irrelevant to Meyer's Third-Party Complaint." (Response, p. 5). This, then, leaves the third possibility, that the right to indemnification exists by common law implication, that is due to derivative or constructive liability, as set forth above.

"Derivative liability is liability for a wrong that a person other than the one wronged has a right to redress. *See Samaron Corp. v. United of Omaha Life Ins. Co.*, 2014 WL 4906314, at *16 (N.D. Ind. Sept. 29, 2014)(citing Black's Law Dictionary 925–26 (7th ed.1999)). To determine whether some right is implied at law, the Court looks to the nature of the underlying Complaint. *Id.* (examining the claims in the original complaint). As noted, that Complaint espouses three theories of recovery against Meyer's: negligence, breach of contract, breach of implied warranties. All three of those theories and the facts pled in support of those theories seeks a judgment against Meyer's for it's own actions. Said differently, the Complaint seeks a judgment against Meyer's for it's negligent installation of the valve or it's breach of the contractual obligation to properly install the valve or for not performing the terms of the contract in a workmanlike fashion. If Meyer's is liable to Lloyds under any of these theories that liability will be neither derivative nor constructive. In other words, each claim is based on Meyer's own acts, not Auburn's. Lloyd's has not claimed, for example, that Meyer's purchased and installed a defective valve thereby making an IPLA claim which, in turn, may create derivative liability in the valve's manufacturer. Thus, as it presently stands Lloyds is not seeking liability based on any wrongful act of Auburn.

That said, Meyer's asserts for the first time in its surreply that it is actually making a breach of warranty claim against Auburn, that is, that Auburn's sale of the valve came with an implied warranty of merchantability.[1] *See Ind.Code §§26-1-2-314*. Courts have interpreted the warranty of merchantability to mean that the seller warrants that the goods will be "free from defects which cause a loss of enjoyment." *R.N. Thompson Assocs. v. Wickes Lumber Co.*, 687 N.E.2d 617 (Ind.Ct.App. 1997) (hereafter, "Wickes Lumber"). As Meyer's latest argument goes, Auburn sold

---

[1] It is debatable whether the Third-Party Complaint actually can be construed as having put the Third-Party Defendant on notice that a claim for breach of warranty formed the basis for the indemnification claim asserted. However, since the Court is dismissing the Third-Party Complaint, it is an irrelevant sidenote to the saga.

the valve to Meyer's under the implied warranty of merchantability and Meyer's passed the valve on to Simborg under the same warranty. Thus, Meyer's asserts that derivative liability exists *if* Meyer's is liable to Lloyd's for breach of warranty.

To further bolster its argument, Meyer's points to the *Wickes Lumber* case in support of the general proposition that an indemnity claim may exist "in breach of warranty situations where the retailer is sued upon implied warranties which are identical to those imposed upon the manufacturer's sale to him." *Wickes Lumber Co.,* 687 N.E.2d at 619.

In *Wickes Lumber,* the Indiana Court of Appeals determined that there was no distinction between a builder's warranty of habitability, that is, its warranty that the home it constructed would be free from defects which substantially impair the use and enjoyment of the house, and a building supplier's warranty that it supplied products free from defects. Thus, the court concluded that a lumber company that supplied plywood to a builder could be forced to indemnify the builder for breach of the builder's warranty of habitability. *Id.* Based upon this holding, Meyers' asserts that Auburn's warranty to provide non-defective materials is the same as the warranty's Meyer's owed to Lloyd's.

The real problem that Meyer's struggles to overcome with this argument is the fact that while it may have an implied warranty of merchantability with Lloyd's that it will supply non-defective products, Meyer's has not been sued for breach of that warranty. Rather, Lloyd's complaint is clear on its face that it is suing Meyer's for its breach of the "implied warranty to perform work in a workmanlike manner and in accordance with applicable codes, standards and practices." [DE 1, at ¶29]. Nowhere in the Complaint does Lloyd's allege that the materials supplied were defective or otherwise unsuitable for the contractual arrangement. The *entirety* of its claim is that Meyer's improperly fitted, installed, supervised or otherwise faltered in the manner

in which it conducted its plumbing services.  Thus, Meyer's argument that the implied warranty of merchantability between it and Auburn somehow translates into an indemnification right for Meyer's is erroneous in light of the claims in the original complaint.  Accordingly, Meyer's has not demonstrated an implied right of indemnification sufficient to maintain a third-party action against Auburn and that Complaint must be dismissed.

## **CONCLUSION**

Meyer's Third-Party Complaint fails to set forth facts against Auburn supporting a plausible claim for indemnification based on contract, statutory obligation, or common law.  Accordingly, the Third Party Complaint against Auburn is DISMISSED.  The Motion to Dismiss [DE 21] is GRANTED.

Entered:  This 24th day of August, 2015.

s/ William C. Lee
United States District Court